FILED'06 MAR 07 13:04 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| INTRANSIT, INC., an Oregon corporation, )<br>)<br>    Plaintiff,                         )<br>                                          )   Civil No. 05-3052-CO<br>    v.                                    )<br>                                          )   ORDER<br>                                          )<br>EXCEL NORTH AMERICAN ROAD TRANSPORT, )<br>INC., a Texas corporation, d/b/a         )<br>EXEL NORTH AMERICAN ROAD TRANSPORT,      )<br>                                          )<br>    Defendant/Third-Party Plaintiff       )<br>                                          )<br>    v.                                    )<br>                                          )<br>WAL-MART STORES INC., a Delaware          )<br>corporation, ALLURE HOME CREATION         )<br>CO., INC., a New Jersey corporation,      )<br>and CAMBRIDGE SILVERSMITHS LTD.,          )<br>INC., a New Jersey domestic               )<br>for-profit corporation,                   )<br>                                          )<br>    Third-Party Defendants.               )<br>_____   ) | |

Magistrate Judge John Cooney filed Findings and Recommendation on November 17, 2005, in the above entitled case. The matter is

1      - ORDER

now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). When either party objects to any portion of a magistrate judge's Findings and Recommendation, the district court must make a de novo determination of that portion of the magistrate judge's findings. See 28 U.S.C. § 636(b)(1); McDonnell Douglas Corp. v. Commodore Business Machines, Inc., 656 F.2d 1309, 1313 (9th Cir. 1981), cert. denied, 455 U.S. 920 (1982).

Third-party defendants Exel North American Road Transport and Wal-Mart have filed objections. I have, therefore, given de novo review of Magistrate Judge Cooney's rulings.

Plaintiff InTransit, Inc. filed this action in state court against Exel North American Road Transport asserting contractual indemnity and breach of brokerage agreement.

InTransit entered into a brokerage agreement with Exel to provide transportation services and Exel agreed to indemnify InTransit for all losses or damage arising from Exel's transportation services.

In May of 2004, InTransit retained Exel to transport a load of merchandise to a Wal-Mart distribution center in Texas. Wal-Mart claims Exel failed to make a timely delivery. Wal-Mart rejected the shipment and took a setoff of $28,869.19 against InTransit for unrelated shipments. InTransit seeks to recover the setoff amount under the terms of the indemnity clause of the brokerage agreement

with Exel, lost profits resulting from lost Wal-Mart business, and the commission that InTransit lost on the Wal-Mart shipment.

Exel filed a third party complaint for common law indemnity and contribution against Wal-Mart, Allure Home Creation Co. and Cambridge Silversmiths, LTD[1] alleging wrongful rejection of the shipment. Wal-Mart removed the case to federal court and filed a cross-claim for indemnity against InTransit to recover its defense costs in this case based on the indemnity provisions in the Wal-Mart/Intransit shipper-broker contract.

Wal-Mart moved to dismiss or transfer the case to Texas or alternatively to reassign to the Portland division. Judge Cooney recommended denying the motion and further recommended remanding to state court, finding that this court lacks jurisdiction. Exel and Wal-Mart object to the F&R.

The issues raised by Wal-Mart's motion before Judge Cooney are whether the claims in this case are subject to the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 14706 (Carmack Amendment) and, if so, whether non-Carmack claims are preempted and venue is appropriate in this court or in a Texas federal court. If Carmack is not applicable, then this court lacks jurisdiction.

---

[1] Allure and Cambridge are manufacturers of the goods allegedly delayed or lost.

OBJECTIONS

Exel objections

1.  The F&R is contrary to law because the plaintiff was the "person entitled to recover under the bill of lading," and its claims, therefore, arise under Carmack.

2.  The F&R is contrary to law because the subject matter of this dispute is subject to the complete preemption doctrine, which defeats application of the well-pleaded complaint rule.

Wal-Mart Objections

1.  The Carmack Amendment provides the exclusive remedy for recovering against a motor carrier for loss, damage or delay to a shipment moving in Interstate Commerce.

2.  The F&R ignores the complete preemption exception to the well-pleaded complaint rule

3.  The Carmack Amendment does not turn on simple labels.

DISCUSSION

The Carmack Amendment to the Interstate Commerce Act

supersedes all the regulations and policies of a
particular state upon the same subject.... It embraces
the subject of the liability of the carrier under a bill
of lading which he must issue, and limits his power to
exempt himself by rule, regulation, or contract. Almost
every detail of the subject is covered so completely that
there can be no rational doubt but that Congress intended
to take possession of the subject, and supersede all

4       - ORDER

>     state regulation with reference to it.... [W]hen Congress
>     acted in such a way as to manifest a purpose to exercise
>     its conceded authority, the regulating power of the state
>     ceased to exist.

Adams Express Co. v. E.H. Croninger, 226 U.S. 491, 505-06, (1913).

The objecting parties contend that complete preemption serves as an exception to the well-pleaded complaint rule in this case. The issue boils down to whether Carmack applies in this case and Judge Cooney found that it did not. The case law appears to go either way on the issue of the applicability of Carmack to brokers.

>     A carrier providing transportation ... shall issue
>     a receipt or bill of lading for property it receives for
>     transportation.... That carrier and any other carrier
>     that delivers the property and is providing
>     transportation or service ... are liable to the person
>     entitled to recover under the receipt or bill of lading.
>     The liability imposed under this paragraph is for the
>     actual loss or injury to the property caused by (A) the
>     receiving carrier, (B) the delivering carrier, or (C)
>     another carrier over whose line or route the property is
>     transported....

49 U.S.C. § 14706(a)(1).

"The term 'carrier' means a motor carrier, a water carrier, and a freight forwarder."  49 U.S.C. § 13102(3).

>     The term "individual shipper" means any person who-
>         (A) is the shipper, consignor, or consignee of
>         a household goods shipment;
>         (B) is identified as the shipper, consignor,
>         or consignee on the face of the bill of
>         lading;
>         (C) owns the goods being transported; and
>         (D) pays his or her own tariff transportation
>         charges.

49 U.S.C. § 13102(13).

5          - ORDER

"The term 'broker' means a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

Exel is the carrier in this case. Wal-Mart qualifies as a shipper. InTransit is a broker, but the issue raised by this motion is whether it qualifies as a shipper or some other party to whom Carmack gives standing.

49 U.S.C. § 14706(d) provides for civil actions against either (1) the delivering carrier; or (2) the carrier responsible for the loss or damage. 49 U.S.C. § 14706(d)(1) and (2). The Carmack Amendment established a uniform national liability policy for interstate carriers, and preempts all state and common law claims against a carrier for damage to or loss of goods. See Air Products and Chems., Inc. v. Illinois Cent. Gulf R.R., 721 F.2d 483, 486 (5th Cir. 1983) (purpose of the Carmack Amendment "was to substitute a paramount and uniform national law as to the rights and liabilities of interstate carriers subject to the amendment"); Underwriters at Lloyds of London v. North Am. Van Lines, 890 F.2d 1112, 1115 (10th Cir. 1989) (with the enactment of the 1906 Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers liability for property loss).

The rationale of the Carmack Amendment provides no indication that it was intended to apply to carrier's claims. Rather, the amendment's intent was to facilitate shippers' recoveries against carriers for damage to transported cargo. <u>Southern Pacific Trans. Co. v. United States</u>, 456 F.Supp. 931, 937 (E.D.Cal. 1978). Thus, Exel may not sue Wal-Mart under Carmack and, therefore, Carmack is inapplicable to Exel's claims against Wal-Mart. In addition, Wal-Mart only seeks to recover its defense costs and not for lost or damaged goods and, therefore, its cross-claim is not governed by Carmack.

Wal-Mart and Exel contend that InTransit seeks to recover from Exel for damages resulting from the failure to deliver the goods and, thus, its claims come under Carmack. InTransit argues that, as a broker, Carmack does not apply to its claims.

An instructive case is <u>Edwards Bros., Inc. v. Overdrive Logistics, Inc.</u>, 581 S.E.2d 570 (Ga. App. 2003). In <u>Edwards</u>, Overdrive was a federally licensed transportation broker, and Edwards Bros. was a trucking company. The parties entered into a brokerage contract in which Overdrive agreed to tender a series of shipments to Edwards who, in turn, agreed to transport the shipments of Overdrive and its shippers. Robinson & Harrison Poultry Company, Inc., contracted with Overdrive to arrange for a load of Robinson's processed chicken to be shipped from Georgia to California. Overdrive retained Edwards to pick up, transport, and

deliver the chicken.  The shipment of chicken was rejected by the consignee in California because the product was delivered above the required temperature.  Robinson submitted a claim to Edwards for the loss and Edwards paid Robinson $16,876.74 for the damage to the shipment.  Because Robinson had not been fully compensated for its loss, it decided to withhold the balance of the loss on the chicken from its July, 2000 payment to Overdrive.  Overdrive brought an action against Edwards and Robinson, jointly and severally, seeking damages against Edwards for breach of contract, or in the alternative, pursuant to the Carmack Amendment, and against Robinson for fraud, breach of contract, open account, and bad faith.  The Carrier, Edwards, argued that the breach of contract claim, etc., was preempted by Carmack.  The court found, however, that

> the Carmack Amendment's purpose is to provide a means by which the shipper can hold liable the initial carrier, engaged in interstate commerce and receiving property for transportation from a point in one State to a point in another State, for through carriage to the point of destination, using the lines of connecting carriers as its agents, and to deny to the initial carrier its former right to make a contract limiting its liability to its own line. Its main purpose is to secure the rights of the shipper by securing unity of transportation with unity of responsibility....
>
> In this action, the broker, Overdrive, rather than the shipper, Robinson, is seeking to recover damages from the carrier, Edwards Bros., pursuant to the brokerage contract between Overdrive and Edwards Bros. Overdrive is not seeking damages under the bill of lading, the provisions of which are fixed as the contract under the Carmack Amendment. [footnote omitted] Because the Carmack Amendment was enacted to protect the rights of shippers

8        - ORDER

>suing under a receipt or bill of lading, not brokers, it does not preempt Overdrive's breach of contract claim in this case. [footnote omitted] Accordingly, the dispute between Overdrive and Edwards Bros. is governed by their brokerage contract.

Edwards Bros., 581 S.E.2d at 572.

In this case, Wal-Mart takes the position that even strangers to the Bill of Lading cannot escape the reach of Carmack, which may be correct in a true subrogation case where the suing party stands in the shoes of the shipper. Wal-Mart contends that standing to sue extends beyond shippers. Taft Equipment Sales Co. v. Ace Trans., Inc.,851 F.Supp. 1208 (N.D.Il. 1994) appears to support Wal-Mart's contention that brokers have standing under Carmack.

In Taft Equipment Sales, the truck broker pursued a Carmack claim against a carrier. However, the issue of whether Carmack applied does not appear to have been an issue in the case as it appears all parties agreed it did apply. Other cases that support Wal-Mart's and Exel's position appear to be limited to cases involving assignees of rights under bills of lading. See, e.g, Bowden v. Philadelphia, B. & W.R. Co., 28 Del. 146, 91 A.209 (1914).

Exel argues that InTransit does in fact succeed to Wal-Mart's right under the bill of lading in this case because Wal-Mart had the right to seek primary liability from InTransit for losses to goods and Intransit had the right to seek reimbursement from the carrier under the InTransit/Wal-Mart contract. However,

InTransit's claims in this case are for direct contractual indemnity and not from an assignment of rights by the shipper. While the case law is not clearly developed in this area, the court finds that Congressional intent was not to preempt InTransit's claims as a broker against Exel as a carrier via the Carmack amendment.

This action is sufficiently removed from a shipper or some other party who has rights under the bill of lading to sue a carrier for damage to goods shipped. The purpose of Carmack is to prevent carriers from being placed in the untenable position of having to determine what their liability may be in many jurisdictions with differing laws. But, in this case, the alleged liability arises from a contract that will not be interpreted differently from one jurisdiction to the next-the jurisdiction of the state in which the contract was made will apply.

Third party defendants Allure and Cambridge, for the first time in this appeal from Judge Cooney's findings, argue that removal was inappropriate because third party defendants may not initiate removal and the removal was untimely and/or waived. Regardless of whether this argument is timely and appropriate,[2] the result Allure and Cambridge seek is achieved because this court

---

[2] Allure and Cambridge signed consents to removal (prior to retaining counsel) and did not oppose Wal-Mart's motion before Judge Cooney.

10       - ORDER

lacks subject matter jurisdiction due to the inapplicability of Carmack.

I find no error in Judge Cooney's Findings, and adopt them in their entirety. Because plaintiff's complaint does not establish that the case arises under federal law, this case is remanded to state court.

IT IS SO ORDERED.

DATED this 7th day of March, 2006.

_____
Michael R. Hogan
UNITED STATES DISTRICT JUDGE